**CITY OF ALLENTOWN, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 26, 2003.

Decided May 11, 2004.

Reargument En Banc Denied July 9, 2004.

Thomas C. Anewalt, Allentown, for petitioner.

James L. Crawford and Jack E. Marino, Harrisburg, for respondent.

Anthony M. Caputo, Harrisburg, for intervenor, Fraternal Order of Police, Queen City Lodge No. 10.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

The City of Allentown (City) appeals from the July 15, 2003, order of the Pennsylvania Labor Relations Board (PLRB), which dismissed the City's exceptions to the Hearing Examiner's Proposed Decision and Order and made the Proposed Decision and Order absolute and final. We affirm.

In the late 1970's the City's police department created the position of Court Liaison Officer (CLO). The CLO is responsible for working with the Lehigh County District Attorney's office and other agencies to coordinate the appearance and testimony of City police officers in various court proceedings. The first person to hold the position was a civilian who was not in the Act 111 [1] police bargaining unit. The second person to hold the position was a park officer who also was not in the Act 111 bargaining unit. The third CLO held the position between 1983 or 1984 and 1989, and he also was a park officer who was not in the Act 111 bargaining unit. (PLRB's Final Order at 1.)

In 1989, a police officer who *was* in the Act 111 bargaining unit was assigned to the position of CLO. From 1989 to 2002, the CLO position was held by a police officer who was a union member. On May 22, 2002, the police chief announced a reorganization of the department, which included a reassignment of the CLO duties to a civilian. On June 10, 2002, without bargaining with the union, the City re-

---

1. Act 111 is the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10, and it governs collective bargaining between police officers and their public employers.

moved the last police officer to hold the CLO position and transferred the work to a civilian. (PLRB's Final Order at 1.)

The union filed a charge of unfair labor practice with the PLRB, and a hearing was held before a PLRB Hearing Examiner. The PLRB Hearing Examiner determined that the City committed an unfair labor practice by unilaterally removing the work of the CLO from the bargaining unit. The City filed exceptions, which the PLRB dismissed. The City now appeals to this court.[2]

The City argues that, because the work of the CLO consisted solely of clerical duties not attendant to any law enforcement functions and required no specialized law enforcement training or certification, the union failed to prove that the City unilaterally removed "police work" from the bargaining unit. However, in making this argument, the City misconstrues the law.

■ Generally, a public employer commits an unfair labor practice if it unilaterally shifts any "bargaining unit work" to non-members without first bargaining. *AFSCME, Council 13, AFL–CIO v. Pennsylvania Labor Relations Board,* 150 Pa. Cmwlth. 642, 616 A.2d 135, 138 (1992) (emphasis in original). As the PLRB stated, "determining whether job duties constitute *bargaining unit work* is mutually exclusive of whether those same job duties constitute *police work.*" (PLRB Final Order at 2; City's brief, App. B) (emphasis add-

ed). Here, the work of the CLO became "bargaining unit work" in 1989 when the City assigned a member of the bargaining unit to the CLO position.[3] Thus, the City's argument must fail.

The City also argues that the union failed to prove that the CLO work had been performed historically and exclusively by bargaining unit members. The City's position is that the union needed to prove that the work was *never* done by anyone outside the bargaining unit. We disagree.

■ A union seeking to prove that a unilateral transfer of work outside the bargaining unit constitutes an unfair labor practice must demonstrate that the bargaining unit exclusively performs the work in question. *AFSCME.* Here, in 2002, when the City unilaterally transferred the CLO work to non-members of the bargaining unit, the bargaining unit was performing the CLO work exclusively. It is true that, prior to 1989, civilians performed the CLO work. However, in determining whether the City committed an unfair labor practice in this case, we look to the circumstances at the time of the unilateral transfer of work in 2002.

Accordingly, we affirm.

## ORDER

AND NOW, this 11th day of May, 2004, the order of the Pennsylvania Labor Rela-

---

**2.** Our scope of review of a final order of the PLRB is limited to determining whether constitutional rights were violated, whether there was an error of law, or whether the record contains substantial evidence to support the findings of fact. *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board,* 804 A.2d 1291 (Pa.Cmwlth.2002). The PLRB possesses administrative expertise in the area of public employee labor relations and should be shown deference; therefore, this court will not lightly substitute its judg-

ment for that of the PLRB. *AFSCME, Council 13, AFL–CIO v. Pennsylvania Labor Relations Board,* 150 Pa.Cmwlth. 642, 616 A.2d 135 (1992).

**3.** In its brief, the PLRB states that, to the extent the City contends that CLO work no longer belongs in the bargaining unit, the City may file a petition for unit clarification. (PLRB's brief at 8–9.)

tions Board, dated July 15, 2003, is hereby affirmed.

### DISSENTING OPINION BY JUDGE COHN.

Respectfully, I dissent. I cannot agree that, in determining whether an employer committed an unfair labor practice by unilaterally transferring work to non-bargaining unit employees, we should only "look to the circumstances at the time of the unilateral transfer of work" as the majority suggests. In my view, that test, while certainly easy to apply, can lead to unreasonable results, and discounts this Court's decisions in *AFSCME, Council 13 v. Pennsylvania Labor Relations Board*, 150 Pa. Cmwlth. 642, 616 A.2d 135 (1992) and *City of Clairton v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 561, 528 A.2d 1048 (1987).

First, when applied to certain factual situations, the "time of unilateral transfer" test can lead to unreasonable results. For example, it is entirely possible that a collective bargaining unit employee may have been in a position only a single day or that someone may have been placed in a position temporarily in order to accommodate a request for light duty work. I do not think that such factors should subject an employer, *ipso facto*, to a finding of an unfair labor practice.

Second, I do not think that allowing an isolated moment in time to be controlling for purposes of deciding if bargaining unit work was transferred is consistent with *AFSCME* and *City of Clairton*. Rather, I think a more expansive view of the history and development of the position is mandated.

In *AFSCME*, public employees filed an unfair labor practice charge after certain inspectors within the Department of Agriculture, Bureau of Standard Weights and Measures, had work transferred from them. The reason for the transfer was that the Commonwealth had entered into memoranda of understanding with various counties, dividing certain of the inspector duties between Commonwealth and county inspectors. The Board found that no unfair labor practice had occurred and the union appealed. We acknowledged that "[g]enerally, a public employer commits an unfair labor practice if it unilaterally shifts *any* bargaining unit work to non-members without first bargaining." *Id.* at 138 (emphasis in original). We observed that the Board had consistently held that "a union seeking to prove that an employer has committed an unfair labor practice by unilaterally transferring bargaining unit work to employees outside of the unit, must demonstrate that the work in question has been performed *exclusively* by the bargaining unit...." *Id.* (Emphasis in original.) In *AFSCME*, however, the Board had revised that position and held that "even in a situation where a bargaining unit has not performed the work in question exclusively, an employer may, nevertheless, commit an unfair labor practice *if the transfer of work outside of the bargaining unit is not consistent with past practice.*" *Id.* at 139. (Emphasis added.) We adopted that position and then went on to hold that there was no evidence in the record indicating that the work being done by the county inspectors was, in fact, inconsistent with past practices.[1] Concluding that the work in question had not been performed exclusively by bargaining unit members, we upheld the Board's decision

---

1. According to the Board's adjudication, such evidence might have consisted of a showing that county employees were performing a significantly greater number of total inspections or were inspecting devices that had traditionally been inspected solely by Commonwealth employees. *Id.* at 139 (quoting from the Board's adjudication).

that no unfair labor practice had been committed by the employer.

In contrast, in *City of Clairton* it was the *employer* who lost before the Board and appealed, asserting that a dispatcher position, which had been filled by police officers and was shifted to fire personnel, was not within the bargaining unit. In affirming the Board's finding that the position was included, we noted that the dispatcher function had been performed by the police for fourteen years and that all police officers were included in the bargaining unit, which had been certified prior to the date the duties had been unilaterally transferred.[2]

In the case before us, while the work was performed for thirteen years by bargaining unit members (and exclusively so), it was also performed for nearly as long (and exclusively so) by *non*-bargaining unit members. In my view, this merits consideration. Given that the record reflects that nearly *half* of the time since the job was created it had been performed by non-bargaining unit employees (from the "late 1970's" until 1989) and, further, noting that Employer is attempting to respond to its evolving business needs by shifting officers onto the street and increasing the warrant squad (testimony of Assistant Chief of Police Ronald Manescu, N.T. 44), there is relevant evidence of past practices here that has not been, in my view, even *considered* by the Board or the majority. Therefore, I would vacate the order and remand for a new adjudication in which all past practices are considered.

---

[2]. The Board explains that in the case before us there has never been a certified bargaining unit because the unit itself predates the time when the Board had jurisdiction to certify Act 111 units. (Board's Brief, p. 4.)