**SOUTH PARK TOWNSHIP POLICE ASSOCIATION, Petitioner,**

v.

**Pennsylvania LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2001.

Decided Jan. 10, 2002.

---

Eric C. Stoltenberg, Harrisburg, for petitioner.

Jennifer E. Will, Harrisburg, for respondent.

Leslie D. Heller, Pittsburgh, for intervenor, South Park Township.

Before SMITH, Judge, KELLEY, Judge,[1] and JIULIANTE, Senior Judge.

KELLEY, Judge.

The South Park Township Police Association (Association) petitions for review of an order of the Pennsylvania Labor Relations Board (PLRB) sustaining in part and dismissing in part South Park Township's (Township) exceptions to the hearing examiner's proposed decision and order.[2] The portion of the PLRB's order that the Association is challenging pertains to the PLRB's determination that the Township did not commit an unfair labor practice in violation of the Pennsylvania Labor Relations Act[3] and what is commonly referred to as Act 111[4] when the Township issued a directive requiring Township police officers to report back to the police station for duty on days when they have court appearances.

On December 27, 1999, the Township issued a written order regarding court appearances by Township police officers. The order provides, in pertinent part, that:

All officers scheduled for court on their daylight shift shall report to the police station by 0730 hours in full uniform. Upon return from court they shall complete all necessary court supplement reports and submit them. All evidence to be returned to the evidence room. The officer will be permitted to leave at the

completion of his tour of duty at 1530 hours.

Prior to the order, officers used their own discretion in deciding whether to report to the police station prior to or following court appearances and they were permitted to complete supplemental reports on their next scheduled shift. The Association filed a charge of unfair labor practices regarding the order and the alleged changes to established past practices between the parties.

The hearing examiner concluded that the Township violated the PLRA and Act 111 when it modified the requirements for daylight shift appearances. The Township filed an exception to the hearing examiner's order alleging therein that it exercised its managerial prerogative to direct personnel when it issued the order requiring daylight shift officers to report to the station prior to court appearances, to return to the station following court appearances that end prior to 3:30 p.m., and to complete supplemental reports during that time.

■ The PLRB agreed with the Township's assertions and sustained the exception. The PLRB determined that if the court proceeding ends before the officer's shift ends, the Township may exercise its managerial prerogative to direct its officers to return to the station to perform police work, including completing supplemental reports, until their scheduled shift ends. The PLRB also determined that the Township lawfully exercised its managerial prerogative when it directed its police officers to report to the police station for their

---

1. The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on December 31, 2001.

2. The Township filed a notice of intervention in this matter with this Court on April 30, 2001.

3. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.

4. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

regularly scheduled daylight shift, prior to attending any court proceedings scheduled during that shift. The PLRB rejected the Association's contention that a past practice existed between the parties which created a separate enforceable condition of employment, whereby officers were permitted to substitute a court appearance for a full day of work and still be compensated for their regularly scheduled eight hour shift. The PLRB determined that the alleged past practice is not provided for in the parties collective bargaining agreement and the Association failed to prove the alleged past practice. This appeal followed.[5]

Herein, the Association raises the following issues:

1. Whether the PLRB erred in determining that the officers' ability to take paid time off prior to and following daylight shift court appearances is not a mandatory subject of bargaining.

2. Whether the PLRB erred in determining that the officers' long standing discretion to take paid time off prior to and after daylight shift court appearances is not a binding past practice or term and condition of employment.

3. Whether the PLRB erred in determining that the Township's December 27, 1999 unilateral order did not violate Act 111 or the PLRA.

■ First, the Association argues that the police officers' ability to take paid time off prior to and following daylight shift court appearances is a mandatory subject of bargaining. The Association contends that the issue here is rationally related to the officers' duties; therefore, it is a mandatory subject of bargaining. The Associ-

ation argues that the leave in question here is not any different than leave paid to an officer who takes a personal day or a vacation day. The Association contends that when an officer takes paid leave from working prior to and after any court appearances, said leave is the same as leave paid to an officer that takes a personal day or a vacation day. The officer enjoys free time while being paid. The Association argues that it is rationally related to the officers' duties and an interest of substantial importance. The Association also contends that the impact on the Township is not significant because the Township is aware of the times that officers are scheduled for court appearances to the same extent that it is aware of officers' vacation days and personal days. Thus, the Association argues, notice is not a problem for the Township when it comes to the use of paid leave.

Pursuant to Section 1 of Act 111, police officers have the right to bargain collectively with their public employers "concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits...." 43 P.S. § 271.1. Pursuant to the PLRA, an employer commits an unfair labor practice if the employer refuses to bargain collectively with the representatives of its employees. Section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e).

■ "Whether an issue is a mandatory subject of bargaining is an important threshold determination because, once it is established that a matter is a mandatory subject of bargaining, the employer is barred from acting unilaterally without

---

5. This Court's scope of review is limited to determining whether there was a violation of constitutional rights, whether there was an error of law or whether the PLRB's necessary findings of fact are supported by substantial

evidence. *Frackville Borough Police Department v. Pennsylvania Labor Relations Board*, 701 A.2d 632 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 551 Pa. 706, 712 A.2d 287 (1998).

satisfaction of the statutory resolution procedure." *Plumstead Township v. Pennsylvania Labor Relations Board*, 713 A.2d 730, 733 (Pa.Cmwlth.1998). A matter is deemed a mandatory subject of bargaining under Act 111 if it bears a rational relationship to the employees' duties. *Id.*

In *Plumstead Township*, this Court recognized that:

> .... Act 111 does not remove all police regulation from the scope of a municipality's managerial decision-making process. any regulation which might be considered essential for the proper and efficient functioning of a police force may remain subject to municipal management. For an issue to be deemed a managerial prerogative and, thus, not a mandatory subject of bargaining, a managerial policy concern must substantially outweigh any impact an issue will have on the employees. Whether a given subject is a managerial prerogative should be determined in the first instance by the PLRB.

*Id.* at 735 (citations omitted).

Herein the PLRB determined the Township lawfully exercised its managerial prerogative when it directed its police officers to report to the police station for their regularly scheduled daylight shift, prior to attending any court proceedings scheduled during that shift. The PLRB also determined that the Township may exercise its managerial prerogative to direct its officers to return to the station to perform police work until their scheduled shift ends. The PLRB opined that there is no more fundamental managerial right than the employer's right to direct personnel by assigning work to its employees during their scheduled hours of employment.

The PLRB rejected the Association's argument that the time prior to and after an officer's court appearance was paid leave just like paid time off from work for such things as vacation and personal days. The PLRB determined that the paid time off for vacation and personal days was negotiated for and that in the present case the parties did not agree that officers were to be paid for not working their entire scheduled shifts on court appearance days. The PLRB pointed out that the parties' collective bargaining agreement reflects that it is on-duty time, not paid time while they are not on duty. Thus, the PLRB found that the taking time off during a regularly scheduled shift under the circumstances in this case was not rationally related to the police officers' duties. The PLRB found that the court appearance itself qualified as only one duty of the officer's job and that such appearance does not discharge an officer from completing any other duties that the employer assigns during the remainder of the officer's shift.

We agree with the PLRB's findings and analysis in this regard. It is well settled that this Court is required to give great deference to the administrative expertise of the PLRB. *Plumstead Township*, 713 A.2d at 734.

The Association's attempts to equate paid time off from work for vacation and personal days equivalent with the time paid for the periods prior to and after court appearances during a scheduled daylight shift is misplaced. This case does not involve paid leave for off-duty time but involves the assignment of police personnel during on-duty time, which is a managerial prerogative. As the PLRB pointed out, there is an important distinction between negotiated pay for non-working time, such as vacation and personal days, and this case. Herein, the parties have not agreed that the police officers will be paid for not working their entire scheduled shifts on court appearance days. Clearly, as stated by the PLRB, the Township's interests in directing its personnel and assigning police

duties to its officers during their scheduled shifts substantially outweighs the police officers' interest in preserving their practice of not performing police work during an entire work shift, simply because the officers are attending a court proceeding. Thus, the PLRB correctly concluded that the issue is a matter of managerial prerogative involving the direction of the Township's police officers.

Accordingly, we conclude that the PLRB did not err in finding that the issue of whether the police officers must report to the police station prior to and after scheduled court appearances during their regularly scheduled daylight shifts is not a mandatory subject of bargaining. Therefore, the PLRB correctly held that the Township did not commit an unfair labor practice by failing to bargain with the Association before the Township unilaterally changed its policy in this regard.

■ Next, the Association argues that there is no question that a long-standing practice existed here. The Association contends that the practice is the officers' option/discretion to report or not to report. As a past practice, the Association asserts, the subject becomes contractual in nature. Thus, the officers' ability to take paid time off before and after court appearances is a mandatory subject of bargaining and thus a term of condition of employment. The Association argues that it was, therefore, not subject to unilateral termination by the Township.

■ There are four situations in which evidence of past practice is used in the field of labor law:

(1) to clarify ambiguous language;

(2) to implement contract language which sets forth only a general rule;

(3) to modify or amend apparently ambiguous language which has arguably been waived by the parties; and

(4) to create or prove a separate enforceable condition of employment which cannot be derived from the express language of the agreement.

*Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board,* 731 A.2d 670, 672 (Pa.Cmwlth.1999) (citing *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 34, 381 A.2d 849, 852 (1977)).

In this case, the PLRB concluded that the Township's direction of personnel is a managerial prerogative not subject to mandatory bargaining. Consequently, the PLRB determined that the Association could not succeed on a past practice argument because the past practice did not pertain to a mandatory subject of bargaining.

As stated previously herein, pursuant to Section 1 of Act 111 police officers have the right to bargain collectively with their public employers "concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits." The PLRB concluded that the Township's requirement that its police officer's report to the police station prior to and after a scheduled court appearance during a regularly scheduled daylight shift fell within the realm of a managerial prerogative. Thus, while it may have been a past practice not to report to the police station during the aforementioned time periods, such practice is not one of the subjects set forth in Section 1 of Act 111 that police officers have a right to bargain collectively with an employer. To conclude that an employer must bargain collectively with a bargaining unit over something that may constitute a past practice but is not a mandatory subject of collective bargaining would bind an employer to virtually all practices including matters of managerial prerogative extant at the time of negotiating a collective bargaining agreement and arbitrarily expand the parameters of the

Act 111. Therefore, we agree with the PLRB that it is necessary that a practice, in order to be preserved, must also be a subject of mandatory bargaining.

Accordingly, the order of the PLRB is affirmed.

### ORDER

AND NOW, this *10th* day of *January,* 2002, the order of the Pennsylvania Labor Relations Board in the above captioned matter is affirmed.