**CHELTENHAM TOWNSHIP,**
Petitioner

v.

**PENNSYLVANIA LABOR
RELATIONS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 3, 2004.
Decided March 31, 2004.

Mary Theresa Metzler, Philadelphia, for petitioner.

Warren R. Mowery, Jr., Harrisburg, for respondent.

Thomas W. Jennings, Philadelphia, for intervenor, Cheltenham Twp. Police Association.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, J., and PELLEGRINI, J., and LEADBETTER, J., and COHN, J.

OPINION BY Judge PELLEGRINI.

Cheltenham Township (Township)[1] appeals an order of the Pennsylvania Labor Relations Board (Board) affirming a proposed decision and order issued by a Hear-

1. *Amicus* briefs were filed on behalf of the Township by the Pennsylvania League of Cities and Municipalities, the Pennsylvania Association of Township Commissioners, and the Association of Pennsylvania Municipal Management as well as the Pennsylvania Association of Boroughs.

ing Examiner finding that the Township violated Act 111[2] as read with Section 6(1)(a) of the Pennsylvania Labor Relations Act (PLRA)[3] by failing to allow a police officer to have a private attorney, retained by the Cheltenham Township Police Association (Union), to act as his union representative during an investigatory interview.

The facts are as follows: Officer Robert Dougherty, Jr. (Dougherty), a 17–year veteran of the Township's Police Department (Department), was involved in a high-speed chase, resulting in an injury to another. The Township suspected that Dougherty might have violated police department directives and scheduled an investigatory interview for April 19, 2002. Pursuant to the terms of an interest arbitration award involving the Township and Union,[4] employees must be notified of their right to representation at investigatory interviews, and if they so choose, the interview will be suspended until such time that representation is present.

Dougherty appeared on April 19, 2002, with Jeff Kolansky, Esquire (Kolansky), an attorney retained by the association to represent its members in internal affairs investigatory interviews. The Township refused to allow Kolansky to represent Dougherty and told him that representation must be by a member of the Union.

The interview was postponed until the following week when Dougherty again arrived with Kolansky as his representative. Kolansky presented a letter from the Union stating that "[p]ursuant to the current Police arbitration award and the collective bargaining agreement regarding Internal

---

2. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. § 217.1–217.10 (commonly known as Act 111).

3. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a). That section states as follows:

   It shall be an unfair labor practice for an employer—
      (a) To interfere with, restrain, or coerce employes in the exercise of the rights guaranteed in this act.
   43 P.S. § 211.6(1)(a). The PLRA, when initially enacted, created the Board and set forth procedures for determining bargaining representatives, established the process for hearings on unfair labor practice complaints, and governed collective bargaining in the private sector. Public sector employees were prohibited from bargaining collectively with their employers because the PLRA excluded from its definition of "employer" the United States, the Commonwealth, and political subdivision thereof, or any municipal authority. In late 1968, pursuant to a constitutional amendment to Article 3, § 31 of the Pennsylvania Constitution, the General Assembly enacted Act 111 granting police and fire personnel the right to bargain collectively with their public employer. Act 111 also provided for mandatory arbitration in the event that public

employers and their employees reached an impasse in the collective bargaining process.
   However, Act 111 did not provide for any of the other typical features contained in collective bargaining statutes; for example, there are no provisions for unfair labor practices. Our Supreme Court in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977), held that Act 111 and the PLRA, when not in conflict, are to be read *in pari materia*.

4. The parties are subject to a series of collective bargaining and interest arbitrations. The interest arbitration in effect states, in relevant part, as follows:
   **8. Internal Investigation/Citizen Complaints**
   The collective bargaining agreement shall be amended to provide as follows:
   
   * * *
   
      c. Prior to giving a written or verbal statement for purposes of internal investigations, the officer must be notified that he has the right to representation during such statements from a representative of the Association. If the police officer chooses to be represented, then the interview will be suspended until such time that representation is present.
   (Reproduced Record at 211a).

Investigations/Civilian Complaints," he (Kolansky) was the elected representative for investigatory interviews. (Reproduced Record at 37a, 105a, 148a, 169a, 215a). The Township allowed him to stay for the preliminary part of the interview where Dougherty was informed that he had a right to union representation and that his statements would be used for internal purposes only.[5] The Township then required Kolansky to leave and encouraged Dougherty to have another available representative, Union President Michael Eves (Eves), represent him. Dougherty refused and wanted only Kolansky to represent him. After being advised that Kolansky was not permitted to take part in the interview, Dougherty proceeded alone and was later suspended for three days for violating the directives in connection with the high-speed chase.[6]

Rather than seeking arbitration regarding the meaning of Paragraph 8 of the Collective Bargaining Agreement as to whether an attorney could represent the employee at the investigatory interview under that provision, the Union filed charges of unfair labor practices against the Township with the Board, alleging that the Township violated Dougherty's *Weingarten* rights[7] and the provisions of Section 6(1)(a) of the PLRA. *See supra* note 2. At the hearing, the Township sought to introduce evidence of past collective bargaining with the Union to illustrate that the Union had attempted to expand the representation rights of employees to include attorney representation, that such negotiations faltered, and that, accordingly, the Township had a "sound arguable basis" defense to the unfair labor practice charge because it believed that attorney representation of employees was outside the scope of *Weingarten* and the parties' collective bargaining. The Hearing Examiner rejected this evidence as irrelevant and, after the hearing, issued a proposed decision and order finding the Township in violation of Section 6(1)(a) of the PLRA as read with Act 111.

Upholding the Hearing Examiner[8] and using this case as an opportunity to expand *Weingarten*, the Board held that the Union had the right to designate a representative who was not a member of the bargaining unit, and that person could also be a lawyer. It discounted cases of the National Labor Relations Board (NLRB) holding that private attorneys were not proper *Weingarten* representatives[9] because those cases dealt with the situation where an employee requested the aid of his own private attorney during the investigative interview, whereas in this case, the employee requested the aid of the Union's

---

5.  *See Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

6.  The Board noted in its order that Dougherty would have been disciplined regardless of the information obtained in the interview.

7.  *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), discussed *infra*.

8.  The Board sustained several exceptions of the Township that did not affect the outcome of the case.

9.  *See, e.g., TCC Center Companies, Inc. and Handley*, 275 N.L.R.B. 604 (1985); *McLean Hospital v. Malin*, 264 N.L.R.B. 459 (1982). In *TCC Center*, the NLRB stated as follows:

> [A] request by an employee, under the circumstances present here, that his or her private attorney be present at an investigatory and/or disciplinary interview is not protected concerted activity. The employee, Carr, was not acting together with other employees in this respect for their mutual aid or protection. He was, instead, seeking the personal and private assistance of his own attorney when faced with possible loss of employment.
> *TCC Center*, 275 N.L.R.B. at 609.

chosen attorney to represent all employees during investigatory interviews. It also reasoned that allowing an attorney to represent an employee during investigatory interviews was no different than allowing an employee to have his or her choice of non-union members to be present at investigatory interviews, citing *Pennsylvania State Corrections Officers Association v. Commonwealth of Pennsylvania, Department of Corrections (Greene SCI)*, 34 Pa. Pub. Empl. Rep. ¶ 52 (Final Order, 2003) (*PSCOA I*). The Board reasoned further:

> The Board notes that a chosen representative's availability may be an extenuating circumstance which would justify the employer's denial of an employee's choice of representative.... The Board also recognizes that unavailability as an extenuating circumstance may be more likely where the chosen representative is an attorney, rather than an employe. The Board cautions the parties that "there is nothing in the Supreme Court's opinion in *Weingarten* which indicates that an employer must postpone interviews with its employees because a particular union representative ... is unavailable either for personal or other reasons for which the employer is not responsible."

10. In addition, the Board upheld the evidentiary ruling of the Hearing Examiner, reasoning that *Weingarten* rights are statutory and not subject to collective bargaining.

11. Our review consists of whether constitutional rights were violated, whether an error of law was committed, or whether the Board's findings of facts are supported by substantial evidence. *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board*, 804 A.2d 1291 (Pa.Cmwlth. 2002). We recognize that "the [Board] possesses administrative expertise in the area of public employee labor relations and should be shown deference; the Commonwealth Court will not lightly substitute its judgment for that

(Reproduced Record at 319) (citations omitted).

Based on this reasoning, the Board effectively held that *Weingarten* allows a union to designate someone outside the bargaining unit who is an attorney to represent an employee in an investigatory proceeding and, based on the Board's decision in *PSCOA I*, employees have their choice of representatives.[10] This appeal followed.[11]

■ Naturally, we begin our analysis [12] with *Weingarten*, where the United States Supreme Court held that employees have the right, if they so request, to a union representative or union steward during investigatory interviews conducted by their employers where the employee reasonably believes that discipline might result from the interview. The Court fashioned what are now commonly known as "*Weingarten* rights" from the language of Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, which grants employees the right to "engage in other concerted activities for the purpose of ... mutual aid or protection." *Id.* The Court explained this phrase as follows:

> When all the other workmen in a shop make common cause with a fellow workman over his separate grievance, and go out on strike in his support, they engage

of the [Board]." *American Federation of State, County & Municipal Employees, Council 13, AFL–CIO v. Pennsylvania Labor Relations Board*, 150 Pa.Cmwlth. 642, 616 A.2d 135, 137 (1992).

12. We note that only one other case from this Court has faced the situation where a police officer invoked his *Weingarten* right during an investigatory interview, and the parties did not dispute that those rights were applicable to Act 111 police and fire collective bargaining units. *See City of Reading v. Pennsylvania Labor Relations Board*, 689 A.2d 990 (Pa. Cmwlth.1997).

in a 'concerted activity' for 'mutual aid or protection,' although the aggrieved workman is the only one of them who has any immediate stake in the outcome. The rest know that by their action each of them assures himself, in case his turn ever comes, of the support of the one whom they are all then helping; and the solidarity so established is 'mutual aid' in the most literal sense, as nobody doubts.

*Weingarten,* 420 U.S. at 261, 95 S.Ct. 959 (quoting *Houston Contractors Association. v. National Labor Relations Board,* 386 U.S. 664, 668–69, 87 S.Ct. 1278, 18 L.Ed.2d 389 (1967)). The Court also noted that exercising the right to representation serves as a balance of power in the workplace:

> The Board's construction [of Section 7 of the NLRA] also gives recognition to the right when it is most useful to both employee and employer. A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview.

*Weingarten,* 420 U.S. at 262–63, 95 S.Ct. 959. Because the language under Section 7 of the NLRA and Section 5 of the PLRA is identical, *see* 43 P.S. § 211.5, the Board has adopted *Weingarten. Pennsylvania Labor Relations Board v. Conneaut School District,* 12 Pa. Pub. Empl. Rep. ¶ 12155 (Final Order, 1981).[13]

The NLRB has refined the *Weingarten* standard since its establishment, holding, for instance, that employees have no right to request a particular *Weingarten* representative. *See Pacific Gas & Electric Co. v. Joseph C. Green,* 253 N.L.R.B. 1143 (1981). The NLRB has also explained that employees may not seek to unduly delay an investigation by insisting on a *Weingarten* representative who is not immediately available. *See Coca–Cola Bottling Co. v. International Association of Machinists Lodge 94,* 227 N.L.R.B. 1276 (1977).

█ In establishing rights and obligations of employers and employes in the public sector, the PLRB has also refined its adoption of the *Weingarten* standard. It has found that an employer has the right to insist on hearing the employee's version of the events, and the *Weingarten* representative may not be disruptive during the interview. *Pennsylvania State Corrections Officers Association v. Commonwealth of Pennsylvania, Department of Corrections,* 33 Pa. Pub. Empl. Rep. ¶ 33190 (Order Denying Reconsideration, 2003), *affirmed, Commonwealth of Pennsylvania v. Pennsylvania Labor Relations Board,* 826 A.2d 932 (Pa.Cmwlth.2003). An employee may meet with his representative before the interview, *Fraternal Order of Police, Conference of Pennsylvania Liquor Control Board Lodges v. Commonwealth of Pennsylvania, Pennsylvania State Police (Liquor Control Board),* 28 Pa. Pub. Empl. Rep. ¶ 28203 (Final Order, 1997), and may briefly consult the representative about a question during the interview. *Commonwealth of Pennsylvania,* 826 A.2d at 935. The right is limited to interviews conducted by the employer, *Upper Gwynedd Township Police Association v. Upper Gwynedd Township,* 33 Pa. Pub.

---

**13.** In determining violations of *Weingarten* rights, the Board has customarily followed the decisions of the NLRB.

Empl. Rep. ¶ 33133 (Final Order, 2002), and the *Weingarten* representative may not engage in bargaining during the interview. *Commonwealth of Pennsylvania*, 826 A.2d at 934.

The primary issue in this case is whether the Board erred by allowing Dougherty to have an attorney present to represent the Union's interests during his investigatory interview. The Township argues that the Board's order effectively gives employees the right to representation by an attorney during an investigatory interview, a result that the *Weingarten* Court specifically condemned. It also argues that by allowing an attorney to represent employees, the Board did not recognize the operational "realities" that its decision imposes on the municipal workplace and will transform an informal, fact-finding process into an adversarial one.

The Board and the Union's position is that a union should be able to designate whomever it desires to represent its interests at the investigatory interview, and if that person also happens to be an attorney, it is of no moment because that person is not acting as an attorney, no attorney-client privilege attaches to any conversations that occur during the interview, and that person has no more rights than any other "outside" person who would act as a representative.

The Township cites a number of cases from other jurisdictions for the proposition that an attorney is not a proper *Weingarten* representative. *See, e.g., Pollard v. University of Massachusetts Medical School*, 2002 WL 31188443, 15 Mass. L. Rep. 159, 2002 Mass.Super. LEXIS 337 (2002) (denying employee's request to have private counsel at investigatory interview); *AFSCME v. Department of Central Management Services & Corrections*, 1 Pub. Empl. Rep. for Ill. (PERI) 2020 (Ill. Labor Relations Board 1985) (stating that an employee does not have a right to have a union representative act as his lawyer). Even if those cases were factually similar, the Board has no obligation to follow the reasoning of these cases because they obviously fall within the construction of their respective state statutes.

By the same token, the Board cites to various cases from other jurisdictions that stand for the proposition that an attorney can be a proper *Weingarten* representative. *See, e.g., Upland Police Officers v. City of Upland*, 111 Cal.App.4th 1294 (2003) (officers may call upon union's attorney for assistance during investigatory interview). What the Board fails to consider, however, is that unlike Pennsylvania, other states have enacted a "Bill of Rights" for police officers. Many such statutes grant the officer under investigation the ability to choose his or her representative and, in some cases, the ability to have counsel represent the officer at the investigatory interview. For instance, in California:

> Upon the filing of a formal written statement of charges, or whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a *representative of his or her choice* who may be present at all times during the interrogation.

CAL. GOV.CODE § 3303 (West 1995) (emphasis added). Rhode Island is one state that grants officers the ability to choose his or her counsel during investigatory interviews:

> At the request of any law enforcement officer under interrogation, he or she shall have the right to be represented *by counsel* of his or her choice who shall be present at all times during the interrogation. The interrogation shall be sus-

pended for a reasonable time until representation can be obtained.

R.I. GEN. LAWS § 42–28.6–2(j) (2003) (emphasis added). Because Pennsylvania law differs in many respects from that of these states, these cases are similarly unpersuasive.

Nonetheless, we agree with the Board and the Union that an "outside representative" attending a *Weingarten* interview who happens to be an attorney can attend the interview, but cannot act as the individual's "attorney." He or she instead is limited to the types of assistance that a non-attorney could give because the role of a *Weingarten* representative is a limited one aimed at assisting the employee during the process; helping the employee state facts favorable to the employee's situation; helping the employer find out the truth regarding the incident in question; and, significantly, protecting the interest of the bargaining unit. So long as the interview remains non-adversary in nature and maintains the format of informal fact-finding, whether the "outside representative" happens to be an attorney is irrelevant because that person is not acting as an attorney, and attorney-client privileges do not attach. If, as the Township suggests, attorneys cannot "change their spots" and begin to act in an adversarial manner during the hearing because of their training, then the Township can terminate the interview and pursue available remedies against the employee and the union for the employee's failure to cooperate in the investigatory process.

■ Even if an attorney could act as the outside representative, the Township also argues that the Board erred by excluding as irrelevant evidence of the parties' history of collective bargaining because had that evidence been admitted, it would have established a "sound arguable basis" defense to the charge of unfair labor practices for allegedly violating Dougherty's *Weingarten* rights.[14] In the Township's offer of proof, it argued that the Union twice attempted and failed to incorporate language in the parties' collective bargaining agreements that granted employees the right to representation by "counsel of his choice and/or an FOP representative" or, alternatively, by "counsel of their choice and/or an Association or FOP representative." (Reproduced Record at 196a–197a). The Township further argued that because the Union wanted language giving employees the right to have "counsel" and/or a "representative," the Union must have understood that the two terms were not synonymous. Thus, the Township argued that this evidence was relevant because the Union's position in this case—allowing an attorney to represent employees—was undermined by the parties' history of collective bargaining and that, in fact, the Union was attempting to achieve in this proceeding what it could not achieve through collective bargaining or interest arbitration.

As we have stated, an employee in this case does not have the right to counsel of his or her choice but to an outside representative of the union who, while he or she may be an attorney, is not and cannot act as one. Accordingly, the Hearing Examiner and the Board did not err when they declined to admit this evidence as a de-

---

**14.** The "sound arguable basis" defense is a defense to charges of unfair labor practices developed by the NLRB and adopted by the Board. Essentially, an employer will not be charged with unfair labor practices if the employer shows that it had a sound arguable basis for ascribing a particular meaning to the parties' contract, and the actions taken by that employer coincide with its interpretation of the contract. *See Jersey Shore Area School District,* 18 Pa. Pub. Empl. Rep. ¶ 18117 (Final Order, 1987).

fense to the charge of unfair labor practices.

Normally, we would uphold the Board's order regarding this issue given our analysis above. As we noted in this case, though, central to the Board's reasoning is that allowing an employee to insist on retaining the Union's attorney to act as representative during investigatory interviews is consistent with its prior holding in *PSCOA I* that an employee has the ability to choose his or her representative, whether or not that representative is a member of the bargaining unit or, in other words, an "outside" representative. We have since overruled *PSCOA I* in *Commonwealth of Pennsylvania, Office of Administration v. Pennsylvania Labor Relations Board*, No. 444 C.D.2003, —— A.2d —— (Pa.Cmwlth., filed March 29, 2004 (*PSCOA II*), where we held that the bargaining unit has the authority to select the representative who will attend investigatory interviews, not the individual employee subject to the investigatory interview. Thus, in an exercise of caution, we will vacate the Board's order in this respect and remand to determine whether it desires to arrive at the same result regarding this issue in light of *PSCOA II*.

President Judge COLINS dissents.

Judge LEADBETTER concurs in the result only.

### ORDER

AND NOW, this *31st* day of *March*, 2004, the order of the Board dated July 15, 2003, at Case No. PF–C–02–65–E is vacated, and the matter is remanded to the Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.